IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                            CRIMINAL ACTION NO. 3:11-00058

HAROLD ARTHUR THOMPSON

**MEMORANDUM OPINION AND ORDER**

On October 10, 2011, this Court held a hearing to sentence Defendant in the above-captioned case. At the sentencing, Defendant's counsel raised two objections to the presentence report. As ordered at the October 10 hearing and for the reasons given in this memorandum opinion, the Court **GRANTS** Defendant's first objection and **DENIES** Defendant's second objection to the presentence report.

**I. Background**

On October 26, 2010, Defendant Harold Thompson was convicted of theft of firearms from a business licensed to sell firearms, in violation of 18 U.S.C. § 922(u). Defendant pleaded guilty to violating § 922(u) by unlawfully taking firearms from the premises of a person licensed to engage in the business of dealing firearms. Section 922(u) provides:

> It shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922(u)

On November 1, 2010, while awaiting sentencing on the § 922(u) offense, Defendant was arrested for violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm), and 18 U.S.C. § 471 (making counterfeit currency). Defendant pleaded guilty to a March 2011 indictment on these the charges. At sentencing, he raised two objections to the presentence report.

## II. Objection 1

The relevant United States Sentencing Guidelines provision for Defendant's 2011 offenses is U.S. Sentencing Guidelines Manual § 2K2.1. U.S. Sentencing Commission, *Guidelines Manual* (Nov. 2010) (hereinafter "USSG"). Section 2K2.1(a)(4)(A) provides for a base offense level of 20 points if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." USSG § 2K2.1(a)(4)(A). This increase in the base offense level is called the "career offender" enhancement. Defendant argues that his earlier felony violation of § 922(u) is not a "crime of violence;" therefore, he is not eligible for the enhanced base sentence level of 20.

"Crime of violence" as used in § 2K2.1 is defined in USSG § 4B1.2(a). USSG § 2K2.1, comment. (n.1). The relevant portion of § 4B1.2(a) provides:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

In the Fourth Circuit, interpretation of "crime of violence" in § 4B1.2 is guided by interpretation of the "substantially similar" term "violent felony" as used in the Armed Career

-2-

Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii).[1]  *United States v. Jenkins*, 631 F. 3d 680, 683 (4th Cir. 2011).  The ACCA defines "violent felony" in pertinent part as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is (ii) burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  The contention in the present objection is that the § 922(u) violation committed by Defendant is not a "crime of violence" as defined in these statutes.

**1.**

Courts take a categorical approach to determining whether the career offender enhancement applies to a given offense.  This means that how the law defines the offense, not how an individual offender may have committed it, determines whether the offense qualifies as a crime of violence.  *Begay v. United States*, 553 U.S. 137, 141 (2008) (categorical analysis appropriate in analyzing ACCA enhancement); *United States v. Jenkins*, 631 F. 3d 680, 684 (4th Cir. 2011) (applying the *Begay* categorical analysis to the career offender enhancement).  The inquiry is "whether the conduct encompassed by the elements of the offense, in the ordinary case," qualifies as a crime of violence. *James v. United States*, 550 U.S. 192, 208 (2007).

Categorical interpretation is complicated when a statute "places together in a single numbered statutory section several different kinds of behavior."  *Chambers v. United States*, 555 U.S. 122, 126 (2009).  In *Chambers*, the Court addressed whether a conviction under an Illinois state

---

[1] The Fourth Circuit is not alone in this approach.  *See, e.g.*, *United States v. Whitson*, 597 F.3d 1218, 1220 n.2 (11th Cir. 2010) ("Though ACCA's 'violent felony' enhancement and the Guidelines' career offender enhancement differ slightly in their wording, we apply the same analysis to both.")

statute criminalizing various means of escaping or refusing to report to penal facilities qualified as a violent felony eligible for the ACCA enhancement. *Id*. at 124-25. The Court decided that the statute's several sub-parts could be grouped into two "roughly similar forms of behavior," "escape crimes" and "failure to report" crimes. *Id*. at 126. The Court then analyzed the defendant's offense of failing to report to a penal institution as part of a modified category of "failure to report" crimes, and decided that the failure to report was not a crime of violence. *Id*. at 130. This approach is called a "modified categorical" analysis. *See, e.g.*, *United States v. Rivers*, 595 F.3d 558, 562 (4th Cir. 2010).

The modified categorical approach is intended only for a "narrow range of cases." *Shepard v. United States*, 544 U.S. 13, 17 (2005) (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)); *see also Rivers*, 595 F. 3d at 563. In *Chambers*, the Court explained that the modified categorical approach is appropriate when a statute criminalizes multiple distinct behaviors. 555 U.S. at 126 ("behavior underlying, say, breaking into a building differs so significantly from the behavior underlying, say, breaking into a vehicle, that for ACCA purposes a sentencing court must treat the two as different crimes.") (citing *Shepard*, 544 U.S. at 16-17). Section 922(u) so encompasses two different behaviors. Theft "from a person" may be a violent felony,[2] but the Defendant pleaded to theft "from the premises" of a person licensed to deal firearms. Although the crimes have

---

[2] In *United States v. Jarmon*, the Fourth Circuit re-affirmed its pre-*Begay* determination that larceny from a person is a crime of violence for the purposes of § 4B1.2(a). 596 F.3d 228, 233 (4th Cir. 2010). The *Jarmon* court reasoned that larceny from a person is similar to the enumerated offense of burglary, is aggressive, and raises the possibility of violent confrontation because it requires larceny from the body or immediate surroundings of another person. *Id.* at 232. Theft from the person of a licensed firearm dealer would be at minimum akin to larceny from a person; if force were used, the crime would fall wtihin § 4B1.2(a)(i). However, because a § 922(u) violation may be categorized into person and premises crimes, *Jarmon* does not control the present case.

similarities, a premises crime is specifically a property crime, while theft "from a person" by definition requires a direct confrontation with another person. It is, therefore, appropriate to analyze Defendant's § 922(u) violation using the modified categorical approach.

**2.**

Under the modified categorical approach, a violation of theft "from the premises of" a licensed firearm dealer–a "premises violation" of § 922(u)–is not a "crime of violence" under the career offender enhancement, § 4B1.2.

The elements of a § 922(u) crime directed at the "premises of a person" do not fall within the first category of § 4B1.2(a), which includes crimes that have, as an element, "the use, attempted use, or threatened use of physical force against the person of another."[3] § 4B1.2(a)(i). A § 922(u) premises violation is likewise not among the enumerated crimes of§ 4B1.2(a)(ii): burglary of a dwelling, arson, extortion, or a crime using explosives. As the Fifth Circuit correctly noted in *United States v. Schmidt*, although certain violations of § 922(u) could be charged as burglary, under a categorical approach, there is no breaking or unlawful presence requirement in the statute, so §

---

[3] The absence of any force element in § 922(u) also forecloses the Government's argument that *United States v. Jenkins*, 128 F. Supp.2d 351 (S.D.W. Va. 2001), applies to this case. *Jenkins* held that a § 922(u) violation was a crime of violence as defined in 18 U.S.C. § 3143, a detention statute. Section 3143 defines "crime of violence" as "an offense that has [as] an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another. . . or. . . by its nature, involves a substantial physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156. In *Jenkins*, Judge Goodwin found that a § 922(u) violation fell within this definition because "in almost any case involving a violation of § 922(u), physical force will be used against the property of another." *Id*. at 353-54. However, unlike § 3156, § 4B1.2(a) does not specify that an offense requiring "property damage" is a "crime of violence," and so *Jenkins* is inapplicable in this case.

922(u) does not fit the crime of violence category by virtue of being a "burglary." 623 F.3d 257, 262 (5th Cir. 2010). As a § 922(u) premises violation is not within the enumerated categories of § 4B1.2(a), it may only be a crime of violence if it falls within the "residual category" of § 4B1.2(a) as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 4B1.2(a)(ii).

**3**.

An examination of the residual category of § 4B1.2(a) begins with the *Begay* decision, where the Court put forth a test for determining whether a predicate crime is a "violent felony" as used in the Armed Career Criminal Act ("ACCA") (and, by analogy, the career offender enhancement). 553 U.S. 137 (2008). *Begay* held that the "violent felony" residual category is limited to crimes "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses. *Id.* at 143. The Court determined that Congress did not intend the residual category to include all crimes that present a serious potential risk of physical injury, but rather crimes "similar" to the enumerated crimes. *Id.* at 142. The New Mexico state DUI conviction at issue in *Begay* did not qualify as a violent felony because it was not purposeful, violent, or aggressive, and therefore "simply too unlike the provision's listed examples" to conclude that Congress "intended the provision to cover it." *Id.* at 145, 142.

The Supreme Court next addressed the residual category in *Chambers v. United States*, where it ruled that an Illinois offense–failure to report to a penal institution–is not a violent felony under the ACCA. 555 U.S. at 129. The Court concluded that an offender convicted of failure to report is not "more likely than others" to resist apprehension and therefore produce physical injury,

-6-

so the offense is not a violent felony. *Id*. More recently, in *Sykes v. United States*, the Court held that a prior conviction for knowing or intentional flight from law enforcement officer by vehicle, a crime under Indiana's resisting law enforcement statute, is a violent felony under the ACCA. 131 S. Ct. 2267, 2271 (2011). The Court reasoned that the offense falls within the residual category of the ACCA because intentional vehicle flight is inherently dangerous to pedestrians, motorists, and law enforcement officers. *Id*. at 2273-74. The intentional element of the flight crime means that the incident will be both initiated and terminated through confrontation; "by definitional necessity," the offense must occur when police are present. *Id.* at 2274. The Court explained that any language in *Begay* indicating that a crime within the residual category must be purposeful, violent, or aggressive is "in addition to the statutory text," and does not dictate a contrary result where an analysis into a crime's "serious potential risk of physical injury to another"–a risk analysis–places a crime within the violent felony residual category. *Id*. at 2275. The result of these recent cases is that the principal inquiry in evaluating whether an offense is within the residual category of the ACCA or career offender enhancements is whether the offense is, as a categorical matter, similar in type and risk to the listed crimes. *Sykes*, 131 S.Ct. at 2275-76.

The Fourth Circuit applied essentially this analysis in a pre-*Sykes* opinion, examining, as did *Sykes*, a resisting arrest crime. In *United States v. Jenkins*, the Fourth Circuit applied *Begay* and *Chambers* in determining that a Maryland state conviction for resisting arrest qualifies as a crime of violence under the career offender enhancement statute, § 4B1.2(a). 631 F.3d 680 (4th Cir. 2011). The *Jenkins* court held that the offense of resisting arrest, unlike the offenses in *Begay* (DUI) and *Chambers* (failure to report), is an intentional offense, and also "poses a threat of direct confrontation between a police officer and the subject to the arrest, creating the potential for serious

-7-

physical injury to the officer and others." *Id*. at 685 (quoting *United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003)).

**4.**

Under these cases, the modified categorical analysis applicable to a § 922(u) premises violation asks whether the premises crime, as ordinarily committed, is of a similar type and risk level to the enumerated crimes of violence. Of the enumerated property crimes in § 4B1.2(a)(ii) (burglary of a dwelling, arson, extortion, use of explosives) the closest comparison to a § 922(u) premises violation is burglary. As Defendant's counsel noted at argument, burglary is an area in which statutory definitions applicable to the ACCA and § 4B1.2(a), normally interpreted in tandem, are not the same. Section 4B1.2(a) enumerates as an included offense "burglary of a dwelling," where the ACCA lists simply "burglary." The Supreme Court has defined burglary under the ACCA as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). ACCA burglary is, therefore, broader than common-law burglary, while § 4B1.2(a) burglary is specifically limited to "dwellings." The weight given to this difference may be limited given the general practice of interpreting the two definitions in tandem, but in this case, the difference matters: § 4B1.2(a) specifies "burglary of a dwelling," implying that other types of burglary are not covered. A § 922(u) premises violation is more like a commercial burglary than a burglary of a dwelling, so this statutory distinction weighs against its categorization as a crime of violence under § 4B1.2(a).

Comparing a § 922(u) premises violation to the remaining enumerated property offenses in § 4B1.2(a) supports this result. A § 922(u) premises violation requires no breaking or unauthorized

presence (as in burglary of a dwelling), no threat of force (as in extortion), no physical injury to the property of another (as in arson) and no actual use of a dangerous device (as with the use of explosives). A § 922(u) premises violation requires harm to neither property nor people. A §922(u) premises violation is therefore different in type and degree of risk from these enumerated crimes.

A § 922(u) premises violation is also unlike some of other the crimes courts have decided are violent felonies or crimes of violence. A § 922(u) premises violation is not akin to resisting arrest (*Jenkins,* 631 F.3d 680 ) or knowing vehicle flight from police officers (*Sykes,* 131 S. Ct. 2267). The *Jenkins* and *Sykes* decisions relied on the probable presence of a police officer during each crime, and the near-certainty of physical confrontation in resistance and flight crimes, in determining that these crimes are enhancement-eligible. Where the elements of a crime require the presence of another person, as in resistance or flight crimes, a determination that there is a "serious potential risk of physical injury to another" is reasonable. In a § 922(u) premises violation, however, no person need be present. This distinction, along with § 4B1.2(a)'s specific limitation of included burglary crimes to burglary of dwellings, supports Defendant's argument that a § 922(u) premises violation is not a crime of violence.

Of course, a § 922(u) premises violation does carry some potential for risk. A successful premises violation requires that the offender carry away a firearm from the dealer's inventory; as Judge Goodwin pointed out in *Jenkins*, this means that at some point in the violation, the perpetrator ends up armed. 128 F.Supp.2d at 353. In *United States v. Schmidt*, the Fifth Circuit agreed that this fact increased the potential risk of the crime, noting that "stolen firearms are more likely to be used in connection with illegal and inherently harmful activities than lawfully possessed guns." 623 F. 3d 257, 264 (5th Cir. 2010). However, if this Court relied on the fact that a § 922(u) premises

violator ends up armed to conclude that a § 922(u) premises violation is a crime of violence, that finding would be in discord with other portions of § 4B1.2. Section 4B1.2 is clear that the possession of a firearm is not a crime of violence, even the unlawful possession of a firearm. A theft crime cannot, be a crime of violence for the reason that its commission results in a firearm possession, since that possession is usually not, itself, a crime of violence.[4]

**5.**

The Government asks this Court to follow the lead of the only circuit court to specifically address whether a § 922(u) violation is a crime of violence under either the ACCA or career offender enhancement statutes in the post-*Begay* years. The Fifth Circuit, in *United States v. Schmidt*, held that § 992(u) premises violation is a "violent felony" under the ACCA. 623 F.3d at 265. The court reasoned that a § 922(u) premises violation creates a high risk of violence since "persons who steal firearms from a dealer have to know that doing so is inherently dangerous because they are stealing from a person who probably either possesses or has easy access to firearms with which to defend themselves and their property." *Id*. at 264. In contrast, Defendant's motion in this case asserts that the crime, "in the usual case, is not committed at a time in which the perpetrator is likely to confront the licensee." Def.'s Mot. at 5. Neither assertion is backed by specific evidence of how the offense is usually committed, so these speculations are not relevant to the present determination. The

---

[4] Application note 1 to § 4B1.2 states that "crime of violence" does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. §5845 (a). USSG § 4B1.2 , comment. (n. 1). Application note 1 also provides that "unlawfully possessing a firearm described in 26 U.S.C. §5845(a) is a crime of violence." *Id*. Combining these provisions, the clear implication of Application note 1 is that possession of a firearm by either a felon or a non-felon is not a crime of violence unless the firearm is of the type which must be registered under 26 U.S.C. §5845(a)).

categorical approach in this case requires evaluation of "how the crime is generally committed," not how it could be committed in any specific instance. *See Taylor v. United States*, 495 U.S. 575, 600 (1990). *Schmidt*'s speculation as to the risk inherent in one possible scenario of a violation of § 922(u) is not, therefore, persuasive.

This Court also declines to follow *Schmidt* because *Schmidt* did not perform the modified categorical analysis appropriate in analyzing § 992(u) violations, and thus appears to have analyzed the offense as including both theft from "a person" and from "the premises of a person" licensed to deal firearms. *See, e.g.,* 623 F.3d at 264. Additionally, *Schmidt* concerned an enhancement under the ACCA, not under § 4B1.2. Although the definitions applicable to these two enhancements are considered "substantially identical," *United States v. Jarmon,* 596 F.3d 228, 231 n. 1 (4th Cir. 2010), the burglary definitions are different. *Schmidt* specifically held that a § 922(u) firearms theft is "sufficiently similar to burglary to be deemed similar in kind and risk." 623 F.3d 257, 264. Insofar as *Schmidt* was comparing a § 922(u) violation to the broad burglary definition found in ACCA rather than the narrower definition in § 4B1.2, its rationale does not apply this case.

For the reasons given above, a § 922(u) violation where an offender takes a firearm from the premises of a licensed firearms dealer is not a crime of violence for the purposes of § 4B1.2(a), and the career offender enhancement does not apply to the Defendant. Defendant's objection 1 is **GRANTED** and a base level of 14 will be used in calculating the applicable guidelines range in this case.

### III. Objection 2

Defendant's second objection is that he should not receive the four-point sentencing enhancement provided in USSG § 2K2.1(b)(6) for the use or possession of a "firearm or ammunition in connection with another felony offense." Defendant argues that the weapon recovered during his arrest was not possessed "in connection with" his counterfeiting offense. Application Note 14(A) to § 2K2.1 states that the (b)(6) enhancement applies "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense . . ." USSG § 2K2.1, comment. (n. 14) (Nov. 2010). *See United States v. Hampton*, 628 F.3d 654, 663 (4th Cir. 2010) ("a weapon is used or possessed 'in connection with' another offense if the weapon 'facilitates or has a tendency to facilitate the [other] offense.'") (internal citations omitted). In other words, "the firearm must have some purpose or effect with respect to the . . . crime; its presence or involvement cannot be the result of accident or coincidence." *Hampton*, 628 F.3d at 663 (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)).

Here, Defendant pleaded guilty to producing counterfeit currency. He used the currency on a number of occasions, and some of the counterfeit currency was recovered from the same vehicle as the firearm at issue, a loaded 9mm pistol with an obliterated serial number.[5] The presence of the gun during an ongoing series of criminal activities makes it more likely that the firearm's "presence or involvement" was not "the result of accident or coincidence." *Id. See United States v. Jenkins*,

---

[5] The type and location of the firearm here–an untraceable handgun located under the seat of a vehicle in which the Defendant was a passenger–confirm that it was likely possessed in connection with the currency crime. *See United States v. Lipford*, 203 F.3d 259, 268 n.7 (4th Cir. 2000) (noting that handguns are more likely than sport rifles to be used in connection with crime; additionally, a firearm near in location to the related criminal activity is more likely to be possessed in connection with that activity); *cf. United States v. Blount*, 337 F.3d 404, 411 (4th Cir. 2003) (holding that although the "in connection with" enhancement did not apply in the case under consideration, the requisite connection might be present if a defendant kept a firearm "close at hand" during the commission of another felony).

566 F.3d 160 (4th Cir. 2009) (upholding the "in connection with" enhancement where defendant possessed a firearm at the same time he possessed cocaine base); *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999) (similar enhancement upheld where defendant possessed firearm while delivering counterfeit currency). In a drug possession offense, "[a] firearm can embolden the actor to possess the drugs or provide the actor protection for himself and his drugs," *Jenkins*, 566 F.3d at 163. Similarly, a firearm can embolden and protect a counterfeiter as he makes and uses counterfeit currency.

As noted in the presentence report, just a few days before the arrest, Defendant sold a shotgun and counterfeit currency to undercover officers. The Fourth Circuit has held that firearms sold along with drugs are possessed "in connection with" the drug distribution offense. *United States v. Lipford*, 203 F.3d 259, 268 (4th Cir. 2000); *United States v. Bullard*, 301 Fed. Appx. 224 (4th Cir. 2008) (unpublished). The same rationale applies to the sale of firearms along with counterfeit currency. Defendant's previous sale of a firearm and counterfeit together supports this Court's conclusion that the firearm in this case was possessed in connection with the counterfeit. The Defendant had an illegal firearm with him as he moved and used the counterfeit currency he produced. That firearm facilitated or had the tendency to facilitate the counterfeiting crime. It was therefore possessed "in connection with" the counterfeiting offense. The § 2K2.1(b)(6) four-point enhancement applies to this case and the Defendant's second objection is **DENIED**.

### IV. Conclusion

For the reasons given in this memorandum opinion and order, the Court **GRANTS** Defendant's first objection and **DENIES** Defendant's second objection. The calculations performed

on the record at the October 10, 2011 hearing, and the sentence imposed on that date, are consistent with this order. The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

        ENTER:       October 21, 2011

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE